UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH HOWARD, et al.,

        Plaintiffs,

v.

POST FOODS, LLC,

        Defendant.
_____/

Case No. 1:19-cv-570

Honorable Hala Y. Jarbou

## **OPINION**

This is an action asserting claims under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., and Michigan's Improved Workforce Opportunity Wage Act (WOWA), Mich. Comp. Laws § 408.931 et seq.  Plaintiffs allege that their employer, Post Foods, LLC, failed to compensate them for all their overtime hours worked as required by the FLSA, and for all their hours worked as required by the WOWA.  Before the Court is Defendant's motion to dismiss the FLSA claim for failure to state a claim (ECF No. 26).  For the reasons herein, the Court will deny the motion.

### **I. Background**

Defendant is a cereal manufacturer that employs hundreds of workers at its manufacturing plant in Battle Creek, Michigan.  A union represents these workers.  Defendant entered into a collective bargaining agreement ("CBA") with the union, effective October 5, 2015.  Article 43.1 of the CBA provides as follows:

> The Company will supply uniforms and laundry services at no cost to the employee. Uniforms must be worn by employees while at work. *Employees shall be required to change clothing on Company premises, and that time shall not be counted as time worked.*

> Employees may not wear or take their uniforms or any safety shoes outside of Plant security gates. This provision will be implemented at a time determined by the Company during the term of this Agreement with 30 days advance notice to the Union.

(Am. Compl. ¶ 15, ECF No. 9 (emphasis added).)

On May 28, 2019, Defendant implemented the new uniform policy contemplated by the CBA. The parties refer to the new policy as the "Captive Uniform Policy" or "CUP." Before the CUP, Defendant did not require its employees to change into their uniforms at work. They could wear them to work, and then put on earplugs, hairnets, bump caps, and safety glasses after they arrived. Also, they could enter the building from one of four entrances.

After implementation of the CUP, employees must change into their uniforms at work, according to a detailed procedure. Defendant restructured the plant to incorporate this procedure. Employees must enter the building through a single entrance. Then they change into work shoes, retrieve their uniforms, and proceed to a locker room to change into their uniforms. After changing, they continue to a handwashing and footwear sanitizing station in another building, where they wait in line to use the station. After washing, they put on hairnets and earplugs, and sanitize any equipment they are carrying. Then they proceed to their work areas in various parts of the building, where they officially "clock in" for work. (*Id.* ¶ 28.) At the end of their shift, they walk to "doffing areas" to remove their uniforms and other accessories and put them into receptacles. (*Id.*)

Plaintiffs allege that the CUP and plant restructuring have "substantially increased the time an employee spends on Defendant's premises" before their shift officially begins and after it ends. (*Id.* ¶ 29.) Setting aside the time complying with the CUP, these employees work more than 40 hours per week. (*Id.* ¶ 30.) Accordingly, Plaintiffs contend that they are entitled to overtime compensation for the time spent complying with the CUP before and after their shifts. That time

2

includes the following activities: "changing clothes"; "donning and doffing earplugs, bump caps, and hairnets"; "sanitizing"; "washing hands"; "waiting in line to wash . . . hands or sanitize"; and "walking to and from workstations post-donning." (Am. Compl. ¶ 48.)

## II. Standard

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Assessment of the complaint must ordinarily be undertaken without resort to matters outside the pleadings; otherwise, the motion must be treated as one for summary judgment under Rule 56. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F. 3d 623, 640 (6th Cir. 2016).

### III. Analysis

#### A. CBA Exclusion

The FLSA requires employers to compensate employees at one and one-half times their "regular rate" if they work over 40 hours per week. 29 U.S.C. § 207(a)(1). The Act permits a unionized employer to exclude certain activities—namely, "any time spent in *changing clothes or washing* at the beginning or end of each workday"—from "measured working time" through the terms of a CBA. *See* 29 U.S.C. § 203(o) (emphasis added). In this case, Article 43.1 of the CBA excludes changing clothes from measured work time. Relying on § 203(o) and the CBA, Defendant contends that Plaintiffs seek compensation for time that is not compensable.

#### 1. Changing Clothes

In *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220 (2014), the Supreme Court interpreted "clothes" in § 203(o) to denote "*items that are both designed and used to cover the body and are commonly regarded as articles of dress*." *Sandifer*, 571 U.S. at 227 (emphasis in original). This definition distinguishes between "clothes and wearable items that are not clothes, such as some equipment and devices." *Id.* at 230. Thus, "a flame-retardant jacket, pair of pants, and hood; a hardhat; a snood; wristlets; work gloves; leggings; [and] metatarsal boots" would meet the definition of clothes, whereas "safety glasses" and "earplugs" would not. *Id.* at 233. The latter have a "covering function" but they are not "commonly regarded as articles of dress." *Id.*

Applying the Supreme Court's definition, the work shoes, uniforms, and bump caps that Plaintiffs must don and doff arguably qualify as "clothes," whereas the earplugs do not. A hairnet might qualify an article of dress, but that is a closer question.[1] Suffice it to say that at least one of

---

[1] The Sixth Circuit has concluded that a hairnet and earplugs meet the definition of "clothes" in § 203(o), but that court used a definition that predates, and is inconsistent with the one articulated in, *Sandifer*. *See Franklin v. Kellogg Co.*, 619 F.3d 604, 614 (6th Cir. 2010).

4

the items that Plaintiffs don and doff—earplugs—does not meet the definition of clothes. Nevertheless, the Supreme Court indicated that "time spent changing clothes" is to be interpreted somewhat broadly. "The question for the courts is whether the period at issue can, *on the whole*, be fairly characterized as 'time spent changing clothes[.]'" *Id.* at 235. "If an employee devotes the vast majority of the time in question to putting on and off equipment or other non-clothes items (perhaps a diver's suit and tank) the entire period would not qualify as 'time spent in changing clothes' under § 203(o), even if some clothes items were donned and doffed as well." *Id.* Conversely, "if the vast majority of the time is spent donning and doffing 'clothes' . . . the entire period qualifies, and the time spent putting on and off other items need not be subtracted." *Id.*

Here, Plaintiffs allege that "the vast majority of time spent changing clothes is not spent 'changing clothes' within the meaning of the FLSA. Employees spend a significant amount of time changing into and out of items that are not 'clothes' within the meaning of the FLSA." (Am. Compl. ¶ 49.) This allegation is somewhat vague and defies common sense. It is difficult to conceive how donning earplugs and a hairnet (assuming a hairnet is not "clothes") could possibly require a significant amount of time, let alone more time than changing in and out of work shoes, a work uniform, and a bump cap. In other words, without more facts, the Court cannot draw a reasonable inference that the time spent by Plaintiffs changing into and out of their work attire falls outside the exclusion in the CBA.

### 2. Other Activities

Even if changing attire is not compensable due to the CBA, however, there are other activities for which Plaintiffs may be entitled to compensation. The CBA does not expressly exclude the time Plaintiffs spend doing any of the following activities: handwashing; sanitizing; waiting in line to wash or sanitize; walking to the locker room and sanitizing station; and walking

to and from Plaintiffs' respective work areas. Moreover, these activities are not excludable as "changing clothes" under § 203(o).[2]

### B. Portal-to-Portal Act

Defendant argues that the time spent walking, waiting, and washing are not compensable due to the Portal-to-Portal Act, 29 U.S.C. § 254(a). That Act excludes the following activities from those that are compensable under the FLSA:

> (1) walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> (2) activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. . . .

29 U.S.C. § 254(a).

#### 1. Principal Activity

The exclusions in the Portal-to-Portal Act require the Court to determine the "principal activity or activities which such employee is employed to perform[.]" *See id.* By their own terms, the exclusions do not apply if the activities at issue are part of Plaintiffs' principal activity or activities. Defendant notes that the complaint does not allege with specificity the tasks that Plaintiffs must perform. However, the complaint provides sufficient details to state a claim, especially when considered alongside the CUP and the CBA, which are attached as exhibits to Defendant's motion to dismiss.[3] Plaintiffs work at a cereal manufacturing plant. The employees who must wash, sanitize, and wear hairnets are the ones who work in the production building.

---

[2] Some of these activities would arguably be excludable as "washing" under § 203(o), if the CBA excluded washing from compensable activity. Defendant does not make that argument.

[3] The Court may consider these exhibits because they are referenced in the complaint and central to the claims therein.

(CUP, ECF No. 26-2, PageID.124.)  It is not difficult to infer that Plaintiffs' principal activity is the production of cereal, for which sanitation is important.

Plaintiffs' principal activity is not necessarily limited to the production of cereal in a sanitary environment.  "The term 'principal activity or activities' in [the Portal-to-Portal Act] embraces all activities which are 'an *integral and indispensable part* of the principal activities[.]'" *Steiner v. Mitchell*, 350 U.S. 247, 252 (1956) (emphasis added).  Consequently, Plaintiffs' principal activity can also include "activities performed either before or after the regular work shift, on or off the production line . . . if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed and are not specifically excluded by Section 4(a)(1)." *Id.* at 256.

In other words, Plaintiffs' principal activities might include donning, doffing, and sanitizing their work garb, if those activities are "an intrinsic element of [their production] activities and one[s] with which the employee[s] cannot dispense if [they are] to perform [their] principal activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 33 (2014).  In *Steiner*, for instance, the Supreme Court held that, for employees in a battery manufacturing facility, donning and doffing protective gear was a principal activity because it was necessary for the nature of the work that they performed in the factory. *Id.* at 252.  Similarly, in *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005), the Supreme Court affirmed the trial court's conclusion that donning and doffing "unique protective gear" by employees cutting and bagging meat was a principal activity.  *Id.* at 32.  Also, in *Mitchell v. King Packing Co.*, 350 U.S. 260 (1956), the Court concluded that time meatpacker employees spent sharpening their knives was compensable because dull knives could "slow down production," "affect the appearance of the meat as well as the quality of the hides," "cause waste," and lead to "accidents." *Id.* at 262.  The foregoing precedents arguably extend to

7

the activities that Plaintiffs perform before they reach the production building. The Court can reasonably infer that washing and taking other measures to prevent contamination in the production building are integral and indispensable to Plaintiffs' work producing cereal that is safe for human consumption. Unlike the employee security screenings in *Integrity Staffing*, which were not integral and indispensable to the employees' handling of packages in the employer's warehouse, it is not obvious that Defendant "could have eliminated [Plaintiffs' activities] altogether without impairing [their] ability to complete their work." *Integrity Staffing*, 574 U.S. at 35.

### 2. Walking and Waiting

Defendant rightly contends that walking or waiting time which *precedes* an employee's principal activities is not compensable due to the Portal-to-Portal Act. But here, Plaintiffs allegedly seek compensation for the walking and waiting time occurring *after* Plaintiffs' first principal activity. Assuming Plaintiffs can show that washing or changing their garb is a principal activity, then the walking and waiting time that occurs thereafter is part of their workday and is, therefore, compensable (unless excluded for other reasons). *See IBP*, 546 U.S. at 34 (holding that "[w]alking to [the locker rooms where the safety gear is donned] before starting work is excluded from FLSA coverage, but the statutory text does not exclude walking from that place to another area within the plant immediately after the workday has commenced"). Under the "continuous workday" rule, "the 'workday' is generally defined as 'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'" *Id.* at 28 (citing 29 C.F.R. § 790.6(b)).

Defendant also argues that, if the CBA renders changing clothes non-compensable under § 203(o), then walking and waiting time occurring after that activity is not compensable. The Sixth Circuit rejected that argument in *Franklin*. In short, "compensability under § 203(o) is

8

unrelated to whether an activity is a 'principal activity.'" *Franklin*, 619 F.3d at 619. A principal activity starts the workday, regardless of whether it is compensable under § 203(o). And because a principal activity starts the workday, then walking or waiting time occurring after that activity may be compensable. *See id.* at 620.

## IV. Conclusion

For all the foregoing reasons, the Court finds that Plaintiffs state a claim under the FLSA. The parties allocate a portion of their briefs to the question of whether Plaintiffs can challenge the validity of the CBA. That question is irrelevant to resolving the present motion. Even assuming the CBA is valid, enforceable, and not challengeable in these proceedings, Plaintiffs state a viable claim. Accordingly, the Court will deny Defendant's motion to dismiss.

An order will enter consistent with this Opinion.

Dated: January 20, 2021 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE