# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KEITH HOWARD, et al.,

Plaintiffs,

v.                                                           Case No. 1:19-cv-570

POST FOODS, LLC,                                HON. HALA Y. JARBOU

Defendant.
_____/

Matthew J. Clark (P76690)
Gordon A. Gregory (P14359)
Richard M. Olszewski (P81335)
Gregory, Moore, Brooks & Clark, P.C.
28 W. Adams Ave., Suite 300
Detroit, MI 48226
(313) 964-5600
*Attorneys for Plaintiffs*
*Additional Attorneys for Plaintiffs
listed on signature page

_____

## SECOND AMENDED COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY

Named Plaintiffs Keith Howard, Archie Smith, Stephanie Banks, Kevin Jackson, Jerry Panczyk, Marianne Heikkila, Terry Greenfield, and Autumn Tendziegloski, as well as all Opt-In Plaintiffs who have filed individual Consents to Join FLSA Action as a Party Plaintiff pursuant to 29 U.S.C. § 216(b) since July 13, 2021 (together, the named Plaintiffs and Opt-In Plaintiffs are referred to as

"Plaintiffs"), by and through their attorneys, bring this Second Amended collective action complaint and demand for jury trial against Defendant Post Foods, LLC. Plaintiffs allege as follows:

## INTRODUCTION

1. This is a collective action brought pursuant to 29 U.S.C. § 216 (b) by Plaintiffs during the relevant period arising from Defendant's willful violations of the Fair Labor Standards Act's ("FLSA"), 29 U.S.C. § 201 *et seq*. overtime pay provisions.

2. Defendant employed Plaintiffs and other similarly situated employees but failed to compensate them for all overtime hours under the FLSA.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216 (b) and 28 U.S.C. § 1331, as Plaintiffs' claims raise a federal question.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## THE PARTIES

5. At all times material to this action, Plaintiffs were, and continue to be, residents of Michigan within the Western District of Michigan.

6. At all times relevant to this Complaint, Plaintiffs were "employees" of Defendant as defined by the FLSA, 29 U.S.C. § 302(e).

7. At all times relevant to this Complaint, the Plaintiffs worked more than forty (40) hours per "workweek," for the Employer, as these terms are used in the FLSA. 29 CFR §778.105

8. Defendant is a foreign limited liability company authorized to do business in Michigan pursuant to the state laws of Michigan.

9. Defendant's business operations are in Battle Creek, Michigan.

10. At all times relevant to this Complaint, Defendant was an "employer" of Plaintiffs and similarly situated individuals as defined by the FLSA, 29 U.S.C. § 203(d).

## FACTUAL ALLEGATIONS

11. Defendant is a cereal manufacturer who regularly employs hundreds of workers in its Battle Creek plant.

12. Local Union # 374 of the United Cereal, Bakery, and Food Workers of the Retail, Wholesale & Department Store Union, UFCW ("Union") collectively represents Defendant's employees.

13. Defendant entered into a collective bargaining agreement ("Agreement") with the Union effective October 5, 2015 to October 4, 2020.

14. Article 43.1 of the Agreement states:

> The Company will supply uniforms and laundry services at no cost to the employee. Uniforms must be worn by employees while at work. Employees shall be required to change clothing on Company premises, and that time shall not be counted as time worked.
>
> Employees may not wear or take their uniforms or any safety shoes outside of Plant security gates. This provision will be implemented at a time determined by the Company during the term of this Agreement with 30 days advance notice to the Union.

15. During the negotiations of the Agreement in 2015, substantial plant restructuring was not discussed. Defendant did not inform the Union of the planned or potential elimination of many locker rooms, the removal of entry points, or other material restructuring plans.

16. During negotiations, Defendant and the Union agreed to bargain over any future alterations to the Policy prior to such changes taking effect.

17. On or about April 11, 2019, the Union received notice from the Defendant regarding the planned implementation of changes to the uniform policy referenced in Article 43.1 of the Agreement.

18. On or about April 26, 2019, the Union received notice from Defendant setting forth the specific changes to the uniform policy and timetable for the implementation of the changes.

19. Defendant implemented the changes to the uniform policy, known as the Battle Creek Food Safety Procedures GMP Entry and Exit Procedure ("Captive Uniform Policy" or "Policy"), in phases, beginning on May 13 and achieving full implementation on May 28.

20. Defendant did not bargain with the Union over the Captive Uniform policy.

21. Prior to the institution of the Captive Uniform Policy, employees were not required to change into their uniforms on Defendant's premises.

22. Employees wore their uniforms while traveling to work and entered the building through one of the four available entrances. Upon entering the building, the employees put on earplugs and hairnets and sanitized their shoes. They then clocked in at the time clocks located close to the entrances. After beginning their shift, they would put on bump caps and safety glasses and proceeded to the break room to receive their work assignments.

23. Locker rooms were available in each of the buildings for the convenience of employees.

24. The time employees spent on Defendant's premises preparing for their shift was minimal.

25. The Captive Uniform Policy requires employees to change into their uniforms on Defendant's premises and establishes a procedure for doing so.

26. In conjunction with the Captive Uniform Policy, Defendant conducted a substantial restructuring of the plant. This restructuring included eliminating or relocating locker rooms and time clocks.

27. After the implementation of the Captive Uniform Policy, employees are required to enter the building through a single entrance. Employees change into their work shoes, retrieve their uniforms, and proceed to the only available locker room. Employees then continue to the handwashing and footwear sanitizing station in another building through a designated walkway. Employees are often forced to wait in line in order to utilize the station. At this station, Employees are also required to put on hair nets, ear plugs, and sanitize any equipment they are carrying. After fulfilling these requirements, employees travel to their respective work areas in various buildings in order to clock in at a time clock. At the end of their shift, these employees walk to doffing areas to remove these items and placed them in various receptacles.

28. In light of the plant restructuring, the Captive Uniform Policy has the effect of substantially increasing the time an employee spends working on Defendant's premises preparing for their shift before clocking in and the time spent after these employees' shifts.

29. Even excluding the hours worked by Plaintiffs as they complete the Policy's requirements, Plaintiffs required to comply with the Policy work more than forty (40) hours per work week.

30.  While the Employer has paid certain Plaintiffs overtime, the amount of overtime compensation is insufficient per the FLSA since the Employer has failed to compensate employees at the overtime rate for any of hours worked to fulfill the requirements of the new Captive Uniform Policy.

31.  Moreover, beginning in April 2020, Defendant launched a COVID-19 wellness screening program which requires all employees, including Plaintiffs, to undergo COVID self-assessments, the completion of a questionnaire, and a temperature check before each shift. Defendant has not compensated any Plaintiffs at the Battle Creek facility for the time they spend completing mandatory COVID-19 screenings since April 2020, and Plaintiffs are subject to discipline for failing to comply with Defendant's COVID-19 screening program. The U.S. Department of Labor (DOL) Wage and Hour division has determined that "many employees" must be paid for COVID-19 temperature check time,[1] and COVID-19 screening was integral and indispensable to Plaintiffs' principal activity of producing uncontaminated cereal by: ensuring the virus does not infect Defendant's Battle Creek employees and facilities, disrupting the cereal production work performed by Plaintiffs, and correspondingly, Defendant's business operations; preventing potential COVID-19 contamination of food products; and ensuring Defendant's compliance with state mandates requiring COVID-19 screening.

---

[1] See www.dol.gov/agencies/whd/flsa/pandemic#6.

## COLLECTIVE ACTION ALLEGATIONS

32. Plaintiffs bring the FLSA claims in this action as a collective action under 29 U.S.C. § 216 (b).

33. Plaintiffs assert these claims on behalf of themselves and on behalf of all similarly situated employees.

34. Plaintiffs seek to notify the following individuals at the earliest time possible of their right under 29 U.S.C. § 216 (b) to join this action by filing in this Court written notice of their consent to join the action:

> All individuals who worked at any time during and after April 2019 for Defendant at its plant located in Battle Creek, Michigan.

(hereinafter referred to as the "FLSA Class"). Plaintiffs reserve the right to amend this definition as necessary.

35. Upon information and belief, Defendant has employed many similarly situated employees during the time period relevant to this action. The identities of these employees, as a group, are known only to Defendant.

36. Because the numerous members of this collective action are unknown to Plaintiffs, joinder of each member is not practical.

37. Plaintiffs ask this Court to require Defendant to furnish Plaintiffs with the contact information of other similarly situated employees pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their FLSA claims.

38. Collective adjudication is appropriate in this case because the employees who Plaintiffs wish to notify of this action:

    a. Have been employed in the same or similar position as Plaintiffs,

    b. Have performed work similar to that of Plaintiffs,

    c. Have been subject to the same policies and procedures as Plaintiffs, and

    d. Have been subject to compensation practices similar to those which form the basis of Plaintiffs' case.

## COUNT I

**Failure to Compensate Employees for Overtime Hours Worked in Violation of the FLSA**

39. Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

40. Article 43.1 of the Agreement does not waive compensability for changing clothes, as permissible under the FLSA, 29 U.S.C. § 203(o), because Defendant and Union did not contemplate the drastic increase in time spent changing clothes when negotiating and entering into the Agreement.

41. Article 43.1 of the Agreement does not waive compensability for changing clothes, as permissible under the FLSA, 29 U.S.C. §203(o), because Defendant failed

to bargain about the implementation of the Captive Uniform Policy prior to such policy taking effect.

42. The time employees spend sanitizing, washing hands, waiting in line to wash their hands or sanitize, donning and doffing earplugs, bump caps, and hairnets, and walking to and from workstations post-donning is not spent "changing clothes" within the meaning of the FLSA, 29 U.S.C. § 203(o). *See Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010).

43. From approximately April 2019 to present, Defendant has willfully violated the FLSA by failing to compensate Plaintiffs and FLSA Collective members for overtime hours worked while changing clothes and for time spent donning and doffing earplugs, bump caps, and hairnets, sanitizing, washing hands, waiting in line to wash their hands or sanitize, and walking to and from workstations post-donning.

44. The *de minimis* exception to compensability under the FLSA does not apply because the vast majority of time spent changing clothes is not spent "changing clothes" within the meaning of the FLSA. Employees spend a significant amount of time changing into and out of items that are not considered "clothes" within the meaning of the FLSA. *See Sandifer v. US Steel*, 571 U.S. 220 (2014).

45. From April 2020 to present, Defendant has willfully violated the FLSA by failing to compensate Plaintiffs and FLSA Collective members for overtime hours worked while undergoing off-the-clock COVID-19 screening required by Defendant.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that the Court grant the following relief:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216 (b) with respect to the FLSA claims set forth herein (Count I );

b. Designating the named Plaintiffs as the representatives of the FLSA collective action, and undersigned counsel as class counsel for the same;

c. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the collective action members of their rights by law to join and participate in this lawsuit;

d. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action members the full amount of damages and liquidated damages available by law;

e. Declaring Defendant violated the FLSA;

  f. Declaring Defendant's actions in violation of the FLSA were willful;

  g. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

  h. Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

  i. Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: February 7, 2022

        Respectfully submitted,

        <u>/s/ Matthew J. Clark</u>
        Matthew J. Clark (P76690)
        Richard M. Olszewski (P81335)
        Gregory, Moore, Brooks & Clark, P.C.
        28 W. Adams Ave., Suite 300
        Detroit, MI 48226
        (313) 964-5600
        matt@unionlaw.net

        Craig J. Ackermann*
        Brian W. Denlinger*
        Ackermann & Tilajef, P.C.
        1180 S. Beverly Drive, Ste. 610
        Los Angeles, CA 90035
        (310) 277-0614
        <u>cja@ackermanntilajef.com</u>
        <u>bd@ackermanntilajef.com</u>

        *Attorneys for Plaintiffs*
        *\*Admitted pro hac vice*